UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CESAR MERCEDES,

                       Plaintiff,

    -v-

UNDERGROUND LIQUIDATION INC., *doing business as* MAGIC MATTRESS R US,

                      Defendant.

CIVIL ACTION NO. 23 Civ. 4766 (VEC) (RFT)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE:**

**INTRODUCTION**

Plaintiff Cesar Mercedes ("Mercedes") filed this putative collective action under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq. and New York Labor Law ("NYLL") §§ 190 et seq. and 650 et seq., seeking payment of unpaid wages and overtime wages and related relief against Defendant Underground Liquidation Inc. doing business as Magic Mattress R US ("Underground"). (*See* ECF 1, Compl. ¶¶ 1-4, 50.) Mercedes alleged that during his employment, Underground failed to pay him the proper weekly and overtime wages required by the FLSA and the NYLL, failed to comply with the paystub requirements of the NYLL, and failed to maintain proper time records as mandated by the FLSA and NYLL. (*See id.* ¶¶ 30-71.)

Underground was served on October 3, 2023. (*See* ECF 12, Aff. of Service.) After Underground failed to appear, the Clerk of Court entered a certificate of default (*see* ECF 21, Certificate of Default), and Your Honor ordered Underground to show cause why a default judgment should not be entered. (*See* ECF 25, Order.) Underground failed to respond, and Your

Honor granted a default judgment on January 30, 2024. (*See* ECF 31, Default J. at 2.) The matter was referred to Magistrate Judge Stewart D. Aaron for an inquest on damages and then was redesignated to me. (*See* ECF 30, Order.)

For the reasons set forth below, I respectfully recommend that the motion for a default judgment should be GRANTED and that judgment should be entered against Underground in favor of Mercedes, with Mercedes to be awarded:

1.  $182,688.62 in damages against Underground, consisting of a) $54,096.00 in unpaid weekly wages; b) $17,708.00 in unpaid overtime premium wages; c) $71,804.00 in liquidated damages (a+b); d) $10,000.00 in statutory penalties for Defendant's failure to provide accurate wage statements and notices in violation of the NYLL; and e) $29,080.62 in pre-judgment interest calculated as of August 12, 2024, plus $17.70 per day for every day thereafter until the Clerk of Court enters a final judgment;

2.  Reasonable costs in the amount of $1,232.00; and

3.  Post-judgment interest pursuant to 28 U.S.C. § 1961.

*See Zavala v. Top Shelf Elec. Corp.*, No. 20-CV-9437 (JGLC) (GWG), 2024 WL 1543605, at *11 (S.D.N.Y. Apr. 10, 2024), *report and recommendation adopted*, 2024 WL 2116457 (S.D.N.Y. May 10, 2024).

## **BACKGROUND**

### I.    **Factual Background**

Unless otherwise indicated, I draw the facts from the Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") (ECF 41) and the Complaint (ECF 1). Given Underground's default, I accept as true all well-pleaded factual allegations in the Complaint,

except as to damages, and the well-supported factual statements in the Proposed Findings. *See City of New York v. Mickalis Pawn Shop*, *L.L.C.*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint."); *Lopez v. Emerald Staffing*, No. 18-CV-2788 (SLC), 2020 WL 915821 at *1 n.1 (S.D.N.Y. Feb. 26, 2020) (relying on and accepting as true facts from the plaintiffs' proposed findings of fact and conclusions of law, the plaintiffs' declarations, and the plaintiffs' complaint) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

Underground does business as Magic Mattress, a furniture store located at 1080 Brook Avenue in the Bronx. (*See* ECF 41, Proposed Findings ¶ 1; ECF 1, Compl. ¶¶ 8, 9, 25.) Mercedes worked as a non-exempt machine operator employed by Underground from in or around April 2015 until on or around February 14, 2023. (*See* ECF 41, Proposed Findings ¶¶ 2-3; ECF 1, Compl. ¶ 26.) Mercedes regularly worked six days per week from Monday through Saturday, and occasionally working on Sundays, from 8:00 am to 5:00 pm with a daily one-hour lunch break. (*See* ECF 1, Compl. ¶ 28; ECF 41, Proposed Findings ¶ 4.) He occasionally worked from 7:00 am to 7:00 pm, and on average he worked approximately 48 hours per week. (*See* ECF 41, Proposed Findings; ECF 1, Compl. ¶¶ 4, 28). Underground failed to track or record his work hours; his hours are based on a conservative estimate of his best recollection. (*See* ECF 41, Proposed Findings ¶ 5.)

Mercedes entered an arrangement with Underground to be paid $10.00 per hour for all non-overtime hours worked, but this amount was below the New York State minimum wage

from 2017-2023. (*See* ECF 41, Proposed Findings ¶¶ 6, 7; ECF 1, Compl. ¶ 27.)[1] Mercedes was

not paid for the time he worked outside his normal work hours, before 8:00 am or after 5:00

pm. (*See* ECF 41, Proposed Findings ¶ 8.) Nor was he paid overtime wages for hours worked in

excess of 40 hours per week. (*See* ECF 41, Proposed Findings ¶ 10; ECF 1, Compl. ¶ 30.) Thus,

Mercedes was not paid the required minimum wage or required overtime wages. (*See* ECF 41,

Proposed Findings ¶¶ 10, 11; ECF 1, Compl. ¶ 30.)

## II.    Procedural Background

Mercedes filed the Complaint on June 6, 2023, asserting claims for unpaid weekly and

overtime pay under the FLSA and the NYLL, as well as failure to comply with the paystub

requirements of the NYLL and failure to maintain proper time records as required by the FLSA

and the NYLL. (*See* ECF 1, Compl. ¶ 30.) After Mercedes received extensions of time to serve,

Jose Martinez, who specifically stated that he was authorized to accept service on behalf of

Underground, was served on October 3, 2023. (*See* ECF 12, Aff. of Service.)

Mercedes was ordered on November 6, 2023 to file a proposed Order To Show Cause

Why Default Judgment Should Not be Entered Against Underground. (*See* ECF 13, Order.)

Mercedes filed the required proposed Order To Show Cause along with a proposed Clerk's

Certificate of Default and a proposed Default Judgment pursuant to FRCP 55(b)(1). (*See* ECF 19,

Proposed Clerk's Certificate of Default; ECF 22, Proposed Order To Show Cause; ECF 24,

Proposed Default J.) The Clerk's Certificate of Default against Underground was entered on

December 21, 2023. (*See* ECF 21, Certificate of Default.)

---

[1]    The New York State minimum wage increased throughout the applicable period and
differed based on the size of the employer in New York City. *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

Underground was ordered to appear for a default judgment hearing on January 26, 2024; Plaintiff's counsel was also expected to appear. (*See* ECF 25, Order.) Neither party appeared, and Your Honor ordered Mercedes to show cause why the case should not be dismissed for failure to prosecute and why Plaintiff's counsel should not be sanctioned for failure to appear at the hearing. (*See* ECF 27, Order.) Mercedes responded, explaining that his counsel had been absent was due to a mistake. (*See* ECF 28, Response to Order To Show Cause.) Default judgment was granted on January 30, 2024. (*See* ECF 31, Default J.)

The matter was referred to Magistrate Judge Stewart D. Aaron on January 30, 2024 for an inquest on damages. (*See* ECF 30, Order.) The matter was redesignated to me on January 31, 2024.

Pursuant to my order (ECF 34), Mercedes filed the "Proposed Findings concerning all damages and other monetary relief in connection with a judgment against Underground, supported by declarations by himself and his counsel. (*See* ECF 41, Proposed Findings; ECF 39, Declaration of Cesar Mercedes ("Mercedes Decl."); ECF 40, Declaration of Andrew R. Frisch ("Frisch Decl.").)[2]

Underground has not responded to any of the Court's orders nor contacted the Court to request an in-person hearing. Accordingly, I shall conduct the inquest based on Mercedes' Proposed Findings and Complaint.

---

[2]    ECF 38 is a copy of Mercedes' Proposed Findings filed under the wrong event type.

## LEGAL STANDARDS

### I.    **Obtaining a Default Judgment**

A party seeking default judgment must follow the steps listed in Rule 55 of the Federal Rules of Civil Procedure ("FRCP"). *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC,* 779 F.3d 182, 186-87 (2d Cir. 2015); Fed. R. Civ. P. 55. Under FRCP 55(a), when a "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Afterwards, under FRCP 55(b), should the party still fail to appear or move to set aside the default, the Court may enter a default judgment. *See* Fed. R. Civ. P. 55(b).

In considering whether to enter default judgments, courts are guided by the factors of: "(1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense*." J & J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-CV-4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing *Swarna v. Al-awadi*, 622 F.3d 123, 142 (2d Cir. 2010)). Courts must be cautious in awarding default judgment because it is an extreme remedy that should only be granted as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

### II.    **Determining Liability**

A defendant's default concedes "all well-pleaded allegations of liability." *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015). However, the Court must then determine if the allegations accepted as true establish liability for the defendants as a matter of law. *See Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). On a

6

motion for default judgment, "the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion." *J & J Sports*, 2014 WL 4467774, at *5 (citation omitted). If the Court finds the well-pleaded allegations demonstrate liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." *Perez v. 50 Food Corp.,* No. 17-CV-7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

## III.    Determining Damages

Once liability is established, the Court conducts an inquiry on the amount of damages. *See Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151 (2d Cir. 1999), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). The plaintiff bears the burden of providing evidence to prove the extent of damages. *See Dunn v. Advanced Credit Recovery Inc*., No. 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012).

A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." *Id.* (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992)). The evidence the plaintiff submits must be admissible. *See Poulos v. City of New York*, No. 14-CV-3023 (LTS) (BCM), 2018

WL 3750508, at *2 (S.D.N.Y. July 13, 2018, *report and recommendation adopted*, 2018 WL

3745661 (S.D.N.Y. Aug. 6, 2018); *see also House v. Kent Worldwide Mach. Works, Inc*., 359 F.

App'x 206, 207 (2d Cir. 2010) ("[D]amages must be based on admissible evidence."). If the

documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the

fairness of" the requested damages, the Court need not conduct an evidentiary hearing. *Fustok*

*v. ContiCommodity Servs. Inc*., 873 F.2d 38, 40 (2d Cir. 1989); *see also Transatlantic Marine*

*Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (explaining that a

court may calculate damages based on declarations and documentary evidence "as long as [the

court has] ensured that there [is] a basis for the damages specified in the default judgment")

(internal quotation marks and citation omitted).

In situations where the employer does not bring forward accurate or complete payroll

records, "an employee has carried out his burden if he proves that he has in fact performed

work for which he was improperly compensated and if he produces sufficient evidence to show

the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v.*

*Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (internal quotation marks omitted)

(quoting *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 687 (1946), *superseded by statute in*

*unrelated part as reflected in Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014)). A court

may credit a plaintiff's "recollections regarding their hours and pay in conducting its inquest.

Nevertheless, the court must ensure the Plaintiffs' approximations and estimates are

reasonable and appropriate." *Coley v. Vannguard Urb. Improvement Ass'n, Inc*., No. 12-CV-5565

(PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018)

(citation omitted). The default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## DISCUSSION

### I.    Default Judgment

In accordance with the two-step process set forth in Rule 55, the Clerk of the Court entered the Certificate of Default, and Your Honor entered the Default Judgment Order. (*See* ECF 21, Certificate of Default; ECF 31, Default J.) On the question whether the default was willful, the Court may infer from Defendant's failure to submit any reply to the Proposed Findings, after having been served, that the default was willful. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc*., No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (concluding that failing to respond to a complaint and subsequent motion for default judgment "indicate willful conduct"). On the issue of prejudice, delaying entry of a default judgment might prejudice Plaintiff. *See Inga v. Nesama Food Corp*., No. 20-CV-0909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that an FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021). As to a potentially meritorious defense, Defendant has presented no defense at all. Thus, the requirements of Rule 55 are satisfied, and the relevant factors weigh in Plaintiff's favor. I conclude that entry of a default judgment is proper in this case.

II.    **Liability**

A.    Jurisdiction and Venue

The Court has subject matter jurisdiction by virtue of the FLSA claims. *See* 28 U.S.C. §

1331 (federal question jurisdiction). The court has supplemental jurisdiction over the NYLL

claims, which share the same common nucleus of operative facts as Plaintiff's FLSA claims. *See*

28 U.S.C. § 1367 (supplemental jurisdiction).

The Court has personal jurisdiction over Underground, which is located in the Bronx and

which was served by Plaintiff. (*See* ECF 41, Proposed Findings ¶ 1; ECF 12, Aff. of Service.)

Personal jurisdiction is "a necessary prerequisite to entry of a default judgment." *See Reilly v.*

*Plot Com*. No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016)

(citation omitted).

Venue is proper because Underground resides and operates its business in this District

through its employees and because a substantial part of events and omissions giving rise to

Mercedes' claims occurred in this District (*see* ECF 41, Proposed Findings ¶¶ 1, 15). *See* 28

U.S.C. § 1391(b)(2).

B.    Statute of Limitations

Under the NYLL, the statute of limitations is six years, and recovery of damages is

limited to the six-year period prior to any filed action. *See* NYLL § 198(3) (2021). To account for

the disruptions due to COVID, New York Governor Andrew Cuomo's Executive Order No. 202.8

and subsequent executive orders tolled the statute of limitations for 228 days, from March 20,

2020 until November 3, 2020, for state law claims. *See Flaherty v. Dixon*, No. 22-CV-2642 (LGS),

2023 WL 2051861, at *4 (S.D.N.Y. Feb. 16, 2023) (finding that the New York COVID-19-related

executive orders tolled New York State statutes of limitations).[3] Courts in this Circuit

interpreted the orders to apply to federal court cases involving state law statutes of limitations.

*See, e.g., Marquez v. Indian Taj, Inc.*, No. 20-CV-5855 (DG) (RML), 2022 WL 4485948, at *2

(E.D.N.Y. Aug. 5, 2022) (collecting cases).

Under the FLSA, the statute of limitations is two years but can be extended to three

years if the violation was willful. *See* 29 U.S.C. § 255(a). A FLSA violation is willful if "the

employer knew or showed reckless disregard for the matter of whether its conduct was

prohibited." *Lopez,* 2020 WL 915821, at *6 (internal quotation marks omitted) (quoting

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Damages are also tied to the

statute of limitations under the FLSA, and so plaintiffs can only "recover damages for pay

periods as far back as the statute of limitations reaches." *Castellanos v. Raymours Furniture Co.,

Inc.*, 291 F. Supp. 3d 294, 300 (E.D.N.Y. 2018).

Mercedes alleges that he worked for Underground beginning in April 2015. (*See* ECF 41,

Proposed Findings ¶¶ 2-3; ECF 1, Compl. ¶ 26.) He filed the Complaint on June 6, 2023. (ECF 1,

Compl.) Plaintiff's NYLL claims relating to wages paid before June 6, 2017 would be time barred

under the six-year statute of limitations, but that date is pushed back 228 days to October 21,

2016. Thus, part of his employment period is outside the limitations periods for both statutes.

However, the NYLL provides for greater relief because its statute of limitations reaches further

back, thus allowing for a longer recovery period. Accordingly, I respectfully recommend that

---

[3]     Governor Cuomo subsequently issued a series of nine Executive Orders extending this toll. *See* 9 N.Y.C.R.R. §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67. Executive Order 8.202.67 was the last extension of the tolling to November 3, 2020. *See id.* § 8.202.67.

Mercedes be awarded damages under the NYLL and willfulness need not be ascertained for the FLSA. *See Schalaudek v. Chateau 20th St. L.L.C.*, No. 16-CV-0011 (WHP) (JLC), 2017 WL 729544, at * 5 (S.D.N.Y. Feb. 24, 2017).

      C.    <u>FLSA and NYLL Elements</u>

Both the FLSA and the NYLL require that employers pay their employees a minimum wage. *See* 29 U.S.C. § 206(a); NYLL § 652(1). To state a claim for wages under the FLSA, a plaintiff must allege that: "(1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum or overtime wages." *Burns v. Scott*, 635 F. Supp. 3d 258, 274 (S.D.N.Y. Oct. 17, 2022) (citation omitted). The NYLL requires similar showing except that it does not require plaintiffs to "show a nexus with interstate commerce or a minimum amount of sales." *Id.* (citation omitted). To recover overtime compensation, a plaintiff "must allege sufficient factual matter to state a plausible claim that [he] worked compensable overtime in a workweek longer than 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

      1.  Employment Relationship

In interpreting the FLSA, courts afford the term employer "an expansive definition with 'striking breadth.'" *Mondragon v. Keff*, No. 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019). "[C]ourts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017)) (citation omitted).

I accept as true all well-supported facts in the Proposed Findings (ECF 41, Proposed

Findings). *See Burns*, F. Supp. 3d at 269. Thus, I accept as true that Mercedes was employed by

Underground as a "non-exempt machine operator." (ECF 41, Proposed Findings ¶¶ 2, 16, 28.)

> 2.   Employer Size

Under New York law, between December 31, 2016 to December 31, 2023, the minimum

wage differed depending on how many employees an employer had. *See* 12 N.Y.C.R.R. § 146-

1.2(a)(1)(i)(a-b). Large employers of 11 employees or more had a higher minimum wage than

small employers of ten or fewer employees.[4] Mercedes never explicitly states that

Underground is a large employer or indicates how many people Underground employs.[5]

Nevertheless, Mercedes uses the large employer minimum wage when calculating damages in

his Proposed Findings. (*See* ECF 41, Proposed Findings ¶¶ 52-74). Several Courts in this District

have calculated damages using the small employer minimum wage when employer size has not

been specified by the plaintiff, on the theory that the plaintiff has not adequately demonstrated

large employer status. *See, e.g., Inga*, 2021 WL 3624666, at *8 n.2 (collecting cases); *Ventura v.

Putnam Gardens Parking Corp.*, No. 20-CV-0119 (JGK) (VF), 2023 WL 3603589, at *9 (S.D.N.Y.

Mar. 20, 2023); *but see Sanchez v. Jyp Foods Inc.*, No. 16-CV-4472 (JLC), 2018 WL 4502008, at *9

n.13 (S.D.N.Y. Sep. 20, 2018) (calculating damages using the large employer minimum wage,

despite the absence of information on employer size, due to the defendant's default). I

respectfully recommend using the small employer minimum wage to calculate damages,

---

[4]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

[5]    Plaintiff's only reference to the size of the employer is that there were more than two
employees. (*See* ECF 1, Compl. ¶ 19.)

because Plaintiff has not adequately shown that Underground was a large employer with 11 or more employees. I therefore have performed the calculations in this report and recommendation in that manner.

     3.   Interstate Commerce

For an FLSA claim, Mercedes must establish that there was engagement in interstate commerce either through his "personal engagement in interstate commerce or enterprise coverage through the employer's engagement in interstate commerce." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354-54 (E.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011)). In the Proposed Findings, there is no mention of interstate activity. However, the Complaint alleges that Underground had gross revenue of over "$500,000 per annum" and that "[a]t all times material hereto, Defendant had more than two employees handling, or otherwise working with tools, materials, equipment and goods that previously had moved in interstate commerce." (ECF 1, Compl. ¶¶ 18, 19.) These allegations are deemed admitted due to Underground's default and are sufficient to support Mercedes' claim under the FLSA. *See Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH) (AKT), 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019) (finding that an allegation that a restaurant "had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $500,000" is sufficient to satisfy the interstate commerce requirement), *report and recommendation adopted*, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019). If Your Honor accepts my recommendation that Mercedes be allowed his recovery under the NYLL rather than the FLSA, there is no need for him to demonstrate a nexus with interstate commerce.

4.  Compensation at the Minimum Wage

From October 21, 2016 to December 31, 2016, a period of 11 weeks, Plaintiff worked an average of 48 hours per week at a fixed rate of $10.00 for all hours worked (*see* ECF 41, Proposed Findings ¶¶ 4, 55), and the relevant New York State minimum wage was $9.00 per hour.[6]

From January 1, 2017 to December 31, 2017, a period of 52 weeks, he worked an average of 48 hours per week at a fixed rate of $10.00 for all hours worked (*see* ECF 41, Proposed Findings ¶¶ 4, 55), even though the relevant New York State minimum wage was $10.50 per hour for small employers.[7] From January 1, 2018 to December 31, 2018, a period of 52 weeks, the relevant New York State minimum wage was $12.00 per hour for small employers; from January 1, 2019 to December 31, 2019, a period of 52 weeks, the relevant New York State minimum wage was $13.50 per hour for small employers; and from January 1, 2020 to February 14, 2023, a period of 163 weeks,[8] the New York State minimum wage was

---

[6]    *See History of the Minimum Wage in New York State,* Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited August 8, 2024). He actually worked 10 weeks and 1 day. However, because these figures are based on Plaintiff's best recollection, I am rounding up to 11 weeks to simplify the calculations. *See Lanzetta v. Florio's Enters., Inc.,* 763 F. Supp. 2d 615, 618 (S.D.N.Y.2011) (finding that the court may enter judgment in the employee's favor, using the employee's recollection to determine damages, "even though the result be only approximate"); *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 70 n.3 (2d Cir. 1997) (finding no error in damages that "might have been somewhat generous" but were reasonable in light of the evidence and "the difficulty of precisely determining damages when the employer has failed to keep adequate records").

[7]    This rate refers to the Basic Minimum Hourly Rates in New York City. There are different rates for fast food employees as well as in areas outside of New York City. *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

[8]    He worked 162 weeks and 2 days, but I am rounding up to 163 weeks to simplify the calculations. *See Lanzetta,* 763 F. Supp. 2d at 618; *Reich,* 121 F.3d at 70 n.3.

$15.00 per hour for small employers.[9] Therefore, from January 1, 2017 to February 14, 2023, Mercedes was paid less than the applicable minimum wage and has stated a claim for unpaid wages.

### 5.   Overtime Compensation

Both the FLSA and the NYLL require that an employer pay for overtime hours worked beyond 40 hours per week at a rate of one and one-half times the employee's regular rate of pay. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. Mercedes was not paid this higher rate but was instead only paid the same fixed rate of $10.00 per hour worked, including those worked beyond 40 hours. (*See* ECF 41, Proposed Findings ¶ 55.) Thus, Mercedes has stated a claim for unpaid overtime wages.

### 6.   Statutory Wage Notices and Statements

Under the NYLL, an employer is required to provide a notice containing the "rate or rates of pay and basis thereof"; "allowances, if any, claimed as part of the minimum wage"; and "the regular pay day designated by the employer." NYLL § 195(1)(a). Failure to do so within ten business days of the first day of employment creates a penalty of $50.00 for each workday that a violation occurs, not to exceed a total of $5,000.00, which is reached after 100 days. *See* NYLL § 198(1-b). The NYLL also requires a wage statement to be provided to an employee with each payment of wages. *See* NYLL § 195(3). Failure to do so creates a penalty of $250.00 for each workday that a violation occurs, not to exceed a total of $5,000.00, which is reached after 20 days. *See* NYLL § 198(1-d).

---

[9]      *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

A court may deny these statutory damages if a plaintiff does not have standing under Article III of the U.S. Constitution. *See Ramirez v. Urion Construction LLC*, 674 F. Supp. 3d 42, 55 (S.D.N.Y. 2023). When a plaintiff has no injury traceable to the violation of the wage notice and statement requirements, that plaintiff does not have standing to recover. *See id.* Therefore, Plaintiff must allege an injury that stems from the employer's failure to provide notice or wage statements. *See Chapman v. City Winery NY – Pier 57, LLC*, No. 23-CV-2778 (LGS), 2023 WL 8280608, at *3 (S.D.N.Y. Nov. 30, 2023).

Mercedes alleges that, due to Underground's failure to provide him with both payroll notice and wage statements, he was unable to "obtain credit from major sources of credit," and therefore "struggled with larger purchases" and "paid more than he probably would have" if Defendant had complied with the law. (ECF 41, Proposed Findings ¶¶ 45, 50.) Thus, he alleges an injury that stemmed from Underground's failure to provide notice or wage statements. *See Lipstein v. 20X Hosp. LLC*, No. 22-CV-4812, 2023 WL 6124048 at *9 (S.D.N.Y. Sept. 19, 2023) ("Plaintiff has plausibly alleged that he was monetarily harmed because he did not receive information about his rate of pay and accurate wage statements, as required by the statute, which hurt his ability to assess whether he was being properly paid and therefore promptly raise issues of underpayment with his employer.").

### III. Damages

#### A.    Evidentiary Basis

The Court must determine whether Mercedes has provided sufficient evidence to support his claimed damages. *See Transatlantic Marine*, 109 F.3d at 111; *Bleecker v. Zetian Sys.*, Inc., No. 12-CV-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013). Mercedes filed a

declaration attesting to the dates and circumstances of his employment. (*See* ECF 39, Mercedes Decl.) Underground has not responded to the Court's orders or the Proposed Findings. Underground has not provided any contrary evidence. I therefore conclude that Mercedes has met his evidentiary burden of proving damages and that an in-person hearing is unnecessary because his submission, combined with Underground's admissions resulting from its default, provides a sufficient basis for evaluating the fairness of his damages request. *See Fustok*, 873 F.2d at 40; *Boston Sci. Corp. v. N.Y. Ctr. for Specialty Surgery*, No. 14-CV-6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015) (same).

B.    Wages

The applicable period is from October 21, 2016 to February 14, 2023.[10] (*See* ECF 41, Proposed Findings ¶ 12). Mercedes worked an average of 48 hours per week, with eight hours of overtime each week, and was paid a fixed rate of $10.00 per hour for all hours worked. (*See id.* ¶¶ 53-55).

1.    Unpaid Minimum Wages

From January 1, 2017 to December 31, 2017, a period of 52 weeks, the New York State minimum wage was $10.50 per hour for small employers.[11] Underground paid Mercedes $480.00 per week, calculated at $10.00 per hour for 48 hours. At the applicable minimum wage of $10.50, Mercedes should have been paid an extra $0.50 per hour worked, resulting in unpaid

---

[10]    Plaintiff's NYLL claims relating to wages paid before June 6, 2017 would be time barred under the six-year statute of limitations, but that date is pushed back 228 days to October 21, 2016 pursuant to Governor Cuomo's Executive Order No. 202.8 and subsequent executive orders, which tolled the statute of limitations.

[11]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

weekly wages of $24.00 per week, calculated at $0.50 per hour times 48 hours. In the 52-week period for 2017, Mercedes should have been paid an additional $1,248.00 in weekly wages, calculated at $24.00 per week, times 52 weeks.

From January 1, 2018 to December 31, 2018, a period of 52 weeks, the New York State minimum wage was $12.00 per hour for small employers.[12] Underground paid Mercedes $480.00 per week, calculated at $10.00 per hour for 48 hours. At the applicable minimum wage of $12.00, Mercedes should have been paid an extra $2.00 per hour worked, resulting in unpaid weekly wages of $96.00 per week, calculated at $2.00 per hour times 48 hours. In the 52-week period for 2018, Mercedes should have been paid an additional $4,992.00 in weekly wages, calculated at $96.00 per week times 52 weeks.

From January 1, 2019 to December 31, 2019, a period of 52 weeks, the New York State minimum wage was $13.50 for small employers.[13] Underground paid Mercedes $480.00 per week, calculated at $10.00 per hour for 48 hours. At the applicable minimum wage of $13.50, Mercedes should have been paid an extra $3.50 per hour worked, resulting in unpaid weekly wages of $168.00 per week, calculated at $3.50 per hour times 48 hours. In the 52-week period for 2019, Mercedes should have been paid an additional $8,736.00 in weekly wages, calculated at $168.00 per week times 52 weeks.

From January 1, 2020 to February 14, 2023, a period of 163 weeks, the New York State minimum wage was $15.00 for small employers.[14] Underground paid Mercedes $480.00 per

---

[12]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

[13]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

[14]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

week, calculated at $10.00 per hour for 48 hours. At the applicable minimum wage of $15.00, Mercedes should have been paid an extra $5.00 per hour worked, resulting in unpaid weekly wages of $240.00 per week, calculated at $5.00 per hour times 48 hours. In the total 163-week period for 2020-2023, Mercedes should have been paid an additional $39,120.00 in weekly wages, calculated at $240.00 per week times 163 weeks.

Over the entire period, Mercedes should have been paid an additional $54,096.00 in earned weekly wages, as summarized in the table below.

| Calculation of Unpaid Wages Minimum Wages | | | | | | |
|---|---|---|---|---|---|---|
| Period | Claimed Unpaid Wages[15] | Number of Weeks | Minimum Wage | Hourly Underpayment (Difference Between Minimum Hourly Wage and Mercedes' Hourly Wage) | Weekly Underpayment (Hourly Underpayment x 48 hours per week) | Total Minimum Wage Underpayment (Number of Weeks x Weekly Underpayment) |
| October 21, 2016 to December 31, 2016 | $0 | 11 | $9.00 | $0 | $0 | $0 |
| January 1, 2017 to December 31, 2017 | $1,440.00 | 52 | $10.50 | $0.50 | $24.00 | $1,248.00 |
| January 1, 2018 to December 31, 2018 | $7,488.00 | 52 | $12.00 | $2.00 | $96.00 | $4,992.00 |
| January 1, 2019 to December 31, 2019 | $51,600.00 | 52 | $13.50 | $3.50 | $168.00 | $8,736.00 |
| January 1, 2020 to February 14, 2023 | | 163 | $15.00 | $5.00 | $240.00 | $39,120.00 |
| **Total** | | | | | | **$54,096.00** |

---

[15]    Plaintiff claims he is owed "$60,528.00 in unpaid minimum wages," which was calculated based on the large employer minimum wage and without the inclusion of Governor Cuomo's Executive Order No. 202.8 and subsequent executive orders tolling the statute of limitations. (*See* ECF 41, Proposed Findings ¶ 71.)

2. Overtime Premium Wages

From October 21, 2016 to December 31, 2017, a period of 11 weeks, the New York State minimum wage was $9.00 per hour.[16] Underground paid Mercedes $480.00 per week, calculated at $10.00 per hour for 48 hours. Mercedes should have been paid an overtime premium of $5.00 per hour for each overtime hour worked, calculated at one-half times his regular rate of pay of $10.00 per hour. Mercedes worked eight overtime hours per week, thus resulting in $40.00 in unpaid overtime premium wages per week, calculated at $5.00 per hour times eight overtime hours. In the 11week period for 2017, Mercedes should have been paid an additional $440.00 in overtime premium wages, calculated at $40.00 per week times 11 weeks.

From January 1, 2017 to December 31, 2017, a period of 52 weeks, the New York State minimum wage was $10.50 per hour for small employers.[17] Underground paid Mercedes $480.00 per week, calculated at $10.00 per hour for 48 hours. Mercedes should have been paid an overtime premium of $5.25 per hour for each overtime hour worked, calculated at one-half times the applicable minimum wage of $10.50 per hour. Mercedes worked eight overtime hours per week, thus resulting in $42.00 in unpaid overtime premium wages per week, calculated at $5.25 per hour times eight overtime hours. In the 52-week period for 2017, Mercedes should have been paid an additional $2,184.00 in overtime premium wages, calculated at $42.00 per week times 52 weeks.

---

[16]    *See History of the Minimum Wage in New York State,* Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited August 8, 2024).

[17]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

From January 1, 2018 to December 31, 2018, a period of 52 weeks, the New York State minimum wage was $12.00 per hour for small employers.[18] Mercedes should have been paid an overtime premium of $6.00 per hour for each overtime hour worked, calculated at one-half times the applicable minimum wage of $12.00 per hour. Mercedes worked eight overtime hours per week, thus resulting in $48.00 in unpaid overtime premium wages per week, calculated at $6.00 per hour times eight overtime hours. In the 52-week period for 2018, Mercedes should have been paid an additional $2,496.00 in overtime premium wages, calculated at $48.00 per week times 52 weeks.

From January 1, 2019 to December 31, 2019, a period of 52 weeks, the New York State minimum wage was $13.50 for small employers.[19] Mercedes should have been paid an overtime premium of $6.75 per hour for each overtime hour worked, calculated at one-half times the applicable minimum wage of $13.50 per hour. Mercedes worked eight overtime hours per week, thus resulting in $54.00 in unpaid overtime premium wages per week, calculated at $6.75 per hour times eight overtime hours. In the 52-week period for 2019, Mercedes should have been paid an additional $2,808.00 in overtime premium wages, calculated at $54.00 per week times 52 weeks.

From January 1, 2020 to February 14, 2023, a period of 163 weeks, the New York State minimum wage was $15.00 for small employers.[20] Mercedes should have been paid an overtime premium of $7.50 per hour for each overtime hour worked, calculated at one-half

---

[18]     *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

[19]     *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

[20]     *See* 12 N.Y.C.R.R. § 142-2.1(a)(1).

times the applicable minimum wage of $15.00 per hour. Mercedes worked eight overtime hours per week, thus resulting in $60.00 in unpaid overtime premium wages per week, calculated at $7.50 per hour times eight overtime hours. In the total 163-week period for 2020-2023, Mercedes should have been paid an additional $9,780.00 in overtime premium wages, calculated at $60.00 per week times 163 weeks.

Over the entire period, Mercedes should have been paid an additional $17,708.00 in overtime premium wages, as summarized in the table below.

| Calculation of Unpaid Overtime Wages | | | | | | |
|---|---|---|---|---|---|---|
| Period | Claimed Unpaid Overtime Wages (Dollars)[21] | Number of Weeks | Number of Overtime Hours Per Week | Minimum Wage | Weekly Overtime Underpayment (Number of Weekly Overtime Hours x .5 x Minimum Wage) | Total Overtime Underpayment (Weekly Overtime Underpayment x Number of Weeks) |
| October 21, 2016 to December 31, 2016 | $0 | 11 | 8 | $10.00 | $40.00 | $440.00 |
| January 1, 2017 to December 31, 2017 | $1,320.00 | 52 | 8 | $10.50 | $42.00 | $2,184.00 |
| January 1, 2018 to December 31, 2018 | $2,704.00 | 52 | 8 | $12.00 | $48.00 | $2,496.00 |
| January 1, 2019 to December 31, 2019 | $12,900.00 | 52 | 8 | $13.50 | $54.00 | $2,808.00 |
| January 1, 2020 to February 14, 2023 | | 163 | 8 | $15.00 | $60.00 | $9,780.00 |
| | **Total** | | | | | **$17,708.00** |

***

---

[21]    Plaintiff claims he is owed "$16,924 in unpaid overtime wages," which was calculated based on the large employer minimum wage and without the inclusion of Governor Cuomo's Executive Order No. 202.8 and subsequent executive orders tolling the statute of limitations. (*See* ECF 41, Proposed Findings ¶ 70.)

Over the entire period, Mercedes should have been paid an additional $71,804.00 in minimum wages and overtime premium wages.

C.    Liquidated Damages

Under both the FLSA and the NYLL, a plaintiff who has demonstrated that he was improperly denied wages may recover the reimbursement of these unpaid wages as well as an additional equal amount of liquidated damages. *See Burns*, 635 F.Supp.3d at 280. A court has discretion to deny liquidated damages if the employer can show that its failure to provide the correct amount in wages was in "good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260. The same applies for the NYLL. *See* NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL. *See Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016). A plaintiff should recover liquidated damages only under one statute – the one that provides greatest relief. *See Burns*, 635 F. Supp. 3d at 281. The NYLL allows for recovery of both pre-judgment interest and liquidated damages, *see Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), while the FLSA does not, *see Mondragon v. Keff*, 2019 WL 2551536, at *11. Thus, I respectfully recommend that Plaintiff should be permitted to recover liquidated damages under the NYLL rather than the FLSA.

Having defaulted, Underground has failed to show that its failure to provide the correct amount in wages was in good faith and that there were reasonable grounds for believing its acts were not in violation of the FLSA or the NYLL. *See id*. Thus, Mercedes is entitled to liquidated damages in an equal amount to his unpaid weekly and overtime wages. *See Burns*,

635 F. Supp. 3d at 281. I respectfully recommend that Mercedes be awarded $71,804.00 in total liquidated damages, which is equal to the amount of his compensatory damages under the NYLL.

       D.     <u>Statutory Damages</u>

Mercedes worked 2308 days during the limitations period as extended by executive orders due to COVID. *See Marquez,* 2022 WL 4485948, at *2.Therefore, Mercedes' cumulative damages exceed the $5,000 limit for each statutory penalty. I respectfully recommend that he should receive the full $5,000 for failure to provide payroll notices under NYLL § 198(1-b) (reached after 100 days) and the full $5,000 for failure to provide wage statements under NYLL § 198(1-d) (reached after 20 days), for a total of $10,000.00 in statutory damages.

       E.     <u>Pre-Judgment Interest</u>

Mercedes seeks prejudgment interest on amounts due for compensatory damages under the NYLL. The Second Circuit has held that, "even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate," because state liquidated damages are punitive in nature. *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *18 (Sept. 8, 2016) (internal quotation marks and citation omitted). By contrast, Mercedes could not recover prejudgment interest and liquidated damages awarded under the FLSA, which presumes that liquidated damages include prejudgment interest. *See id.* I therefore respectfully recommend that Mercedes be awarded pre-judgment interest on his NYLL minimum wage and overtime claims. However, a plaintiff cannot recover prejudgment interest on NYLL liquidated damages or NYLL statutory damages

for violations of the wage statement and notice provisions. S*ee Teofilo v. Real Thai Cuisine Inc.*, No. 18-CV-7238 (KPF), 2021 WL 22716, at *4 (S.D.N.Y. Jan. 4, 2021).

State law provides that interest shall be at the rate of nine percent per year. *See* N.Y. C.P.L.R. § 5004. When damages were "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). "Simple prejudgment interest is calculated from a singular, midpoint date . . . by multiplying the principal by the interest rate by the time period – from a singular, midpoint date – up until and including the date judgment is entered." *Xochimitl*, 2016 WL 4704917, at *18 (internal quotation marks and citation omitted). Courts can determine the appropriate midpoint date by looking for the median date between the earliest ascertainable date the cause of action existed and the date the action was filed. *See Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-0461 (WHP) (JLC), 2014 WL 4207106, at *12 (S.D.N.Y. Sep. 8, 2016).

The earliest ascertainable date the cause of action existed for Mercedes is in April 2015, which is outside the six-year statute of limitations, as tolled due to executive orders. (*See* ECF 41, Proposed Findings ¶ 3.) The earliest applicable date in which there exists a valid cause of action is October 21, 2016, while the date the action was filed was June 6, 2023. (*See* ECF 41, Proposed Findings ¶12; ECF 1, Complaint). Thus, the midpoint date would be approximately February 13, 2020 rather than Plaintiff's proposed date of March 12, 2019 (*see* ECF 41, Proposed Findings ¶78(f)).

I respectfully recommend that Mercedes should receive pre-judgment interest on a principal amount of $71,804.00 at a rate of nine percent per annum, totaling $29,080.62 as of

August 12, 2024, the date of this report and recommendation, with an additional $17.70 per day for every day thereafter until the Clerk of Court enters a final judgment.[22]

      F.    <u>Post-Judgment Interest</u>

Under 28 U.S.C. § 1961, Mercedes is entitled to post-judgment interest on his money judgment in a civil case recovered in a district court. Post-judgement interest is "calculated from the date of the entry of judgment, as a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a).

      G.    <u>Attorney's Fees and Costs</u>

The FLSA and the NYLL permit a successful plaintiff to recover costs and reasonable attorney's fees. *See* 29 U.S.C. § 216(b); NYLL §§ 198, 663. Mercedes does not seek an award of attorney's fees. However, Mercedes seeks $1,232.00 in costs. (*See* ECF 41, Proposed Findings ¶ 78.) Costs that are reasonable are those that are incurred by the attorney and normally charged to the client. *See Burns*, 635 F. Supp. 3d at 285 (citing *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Mercedes has attached an invoice of costs in support of his request. (*See* ECF 40, Frisch Decl. Ex. A). The costs include the court filing fee and fees for executing service of process, which are the types of costs typically found to be reasonable. *See Farez v. Pinery Cleaners*, 22-CV-06728 (VSB) (SDA), 2023 WL 6977058 at*6 (S.D.N.Y. July 21, 2023).

---

[22]     New York law states that the endpoint for calculating prejudgment interest should be the "date of entry of final judgment." N.Y.C.P.L.R. § 5002; *see also Schipani v. McLeod,* 541 F.3d 158, 165 (2d Cir. 2008). The period from February 13, 2020 through August 12, 2024 is 1643 days, or 4.50 years. The interest through August 12, 2024 is calculated as follows: $71,804 x 4.50 years x 0.09. The daily interest is $71,804 x 0.09/365.

These costs listed in the invoice and sought by Plaintiff amount to a total of $1,232.00.[23] Thus, I respectfully recommend Mercedes be awarded $1,232.00 for reasonable costs.

**CONCLUSION**

For the reasons set forth below, I respectfully recommend that the motion for a default judgment should be granted and that judgment should be entered against Underground in favor of Mercedes, with Mercedes to be awarded:

1. $182,688.62 in damages, consisting of: a) $54,096.00 in unpaid weekly wages; b) $17,708.00 in unpaid overtime premium wages; c) $71,804.00 in liquidated damages (a+b); d) $10,000.00 in statutory penalties due to defendant's failure to provide accurate wage statements and notice in violation of the NYLL; and e) $29,080.62 in pre-judgment interest, plus $17.70 per day for every day after August 12, 2024 until the date the Clerk of Court enters a final judgment;

2. Reasonable costs in the amount of $1,232.00; and

3. Post-judgment interest of pursuant to 28 U.S.C. § 1961.

DATED:       August 12, 2024
             New York, New York

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

---

[23]       Footnote 1 in the Frisch Declaration (ECF 40) states that only the highlighted costs in Exhibit A are sought by Plaintiff. These highlighted costs add up to $1,107.63, not the $1,232.00 sought by Plaintiff. However, it appears that a "Postage & Shipping" line item was inadvertently highlighted in lieu of the "Process Service" line item in the row directly below. If the Process Service charge is calculated in lieu of the Postage & Shipping charge, the total costs amount to $1,232.00. Accordingly, I recommend awarding Plaintiff's requested amount in costs.

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).